STATE OF WEST VIRGINIA *v.* STEWART MOWERY

(No. 7903)

Submitted October 2, 1934.  Decided October 23, 1934.

*McCauley, Zimmerman & McCauley,* for plaintiff in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

MAXWELL, JUDGE:

Defendant was granted a writ of error to a judgment of the circuit court of Pendleton County, on a verdict of guilty, returned on an indictment charging him with having "unlawfully and feloniously" assaulted Neufer Eye.

Our statute, Code 1931, 61-2-9, creates two felony offenses—malicious assault and unlawful assault. In respect of unlawful assault, the said section 9 provides that

if any person shoot, stab, cut or wound any person, or by any means cause him bodily injury, and "such act be done unlawfully, but not maliciously," with intent to maim, disfigure, disable or kill, "the offender shall be guilty of a felony, and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars." If any of the acts just enumerated be accompanied by malice, the offense is malicious assault. The latter carries a much severer punishment.

The indictment in the case at bar, after alleging the act to have been committed "unlawfully and feloniously", omits the words "but not maliciously". Defendant contends that this omission renders the indictment insufficient and ineffectual upon which to base a conviction of unlawful assault, and therefore his motion to quash the indictment should have been sustained.

Ordinarily, in charging a statutory offense, the indictment or information sufficiently lays the charge, "if it adopts and follows the language of the statute or is in language substantially equivalent thereto, if the defendant is thereby apprised of the particular offense charged, and the court is enabled to see therefrom on what statute the charge is founded." 14 Ruling Case Law, p. 185. Consult *State* v. *Nazel*, 109 W. Va. 617, 156 S. E. 45. The words "but not maliciously" as used in Code 1931, 61-2-9, in no way add to the description of the offense, nor are they an integral part thereof, and being unnecessary to establish the offense laid in the indictment, need not be alleged. The offense here involved is an unlawful assault with intent as set forth in the statute. Such is the charge laid in the indictment. The intent is the essence and gist of the crime. *State* v. *Meadows*, 18 W. Va. 658. A negation that the assault was done maliciously possibly would further vivify the charge but would particularize no element of the offense not already sufficiently laid in the indictment. "All allegations, unnecessary to be proved, may be omitted in any indictment or other

accusation." Code 1931, 62-2-9. And where such provision as is here under consideration is not essential to a description of the offense charged, but merely emphasizes or accentuates the same, it need not be negatived. 31 Corpus Juris, p. 725. Cf. *State* v. *Holmes,* (Del.) 55 Atl. 343. Such situation is to be distinguished from one wherein the negation constitutes an essential element of the offense, as, for example, the carrying of dangerous weapons without a state license therefor.

Defendant further contends that his conviction is not supported by the evidence.

At the time of the happening of the events involved Mowery was incarcerated in the Pendleton County jail, and with three other prisoners was restricted within the confines of a large metal inclosure in the center of the jail room. There was a corridor or passageway extending around three sides of the large cell. Neufer Eye, eleven year old son of Andrew Eye, sheriff and jailer, while standing in the jail corridor with the nozzle end of a water hose in his hands, pointed it in the direction of defendant. The boy had just been putting water into some vessels for his mother. The hose was connected to a spigot in the space occupied by the prisoners. George Whetzel, a prisoner, turned the spigot and the water was thrown on the defendant. He instantly either pitched or threw a piece of coal, striking Neufer Eye in the forehead and inflicting a wound about one-half inch in length.

There is some confusion in the record as to whether Whetzel, viewing the situation, turned on the water to gratify his own prankish notion, or, unaware of the conditions, turned it on wholly at the instance of Neufer Eye.

The record fails to establish clearly the size of the missile thrown by the defendant. There is also a conflict in the evidence as to the force with which it was thrown. The defendant and Whetzel testified that the piece of coal was of the size of a "hulled walnut", and that the defendant merely tossed it over his shoulder in the direction of the Eye boy. Buzz Warner, another of the prisoners and a witness for the State, testified that the

piece of coal was thrown with considerable force, sufficient to stagger Neufer; that the natural consequence thereof would be to inflict injury; and that as defendant threw the coal he uttered the statement that he (defendant) "would knock his damn head off." Neufer Eye said that he dropped the hose when struck; that he remembered nothing from that instant until he arose from a couch in a room in another part of the building, sometime later; and that thereafter he immediately went to his mother who treated the wound. The boy was ill that evening. Dr. S. B. Johnson, being called the following day, treated him for about two weeks. The doctor testified that upon his first examination of Neufer, he was nervous, nauseated and suffering from shock.

With this as a background the jury returned a verdict of guilty, and sentence of one year in the penitentiary was imposed by the court. The finding may have been severe but that was primarily a jury matter.

As already noted, the gist of the offense of unlawful assault is the wrongful intent. Upon considering such an offense "if the act itself is essentially wrongful, it is not necessary to show an unlawful intention, for the intent is necessarily embraced in the wrongful act." 2 Ruling Case Law, p. 529. Neither is it necessary to show that the accused intended the particular wrong which resulted from his act, nor is it any defense that the act was done in sport or fun. 16 Corpus Juris, pp. 82, 83.

The fact that the defendant struck the prosecuting witness with a lump of coal of sufficient size and with enough force to stagger him and inflict an open wound in his forehead one-half inch in length, resulting in partial unconsciousness, shock, nervousness and nausea, unquestionably establishes criminal intent. The intent to commit a particular crime may not be presumed from acts which might have culminated in such crime but did not. *Thacker* v. *Commonwealth*, (Va.) 114 S. E. 504. But the law does presume intention from a consummated act. This is true in murder. *State* v. *Hedrick*, 99 W. Va. 529, 130 S. E. 295. It is with equal force applicable to assaults. The principles appertaining to murder and

manslaughter are in large measure pertinent to malicious assault and unlawful assault. The former is correlated to murder; the latter to manslaughter. *State* v. *Harr*, 38 W. Va. 58, 17 S. E. 794; *State* v. *Scaggs*, 99 W. Va. 689, 129 S. E. 705; *Harris* v. *Commonwealth*, (Va.) 114 S. E. 597. The manner of the use of the lump of coal by the defendant rendered it dangerous. An article not primarily a weapon may become such in the manner of its use. *Barboursville ex rel. Bates* v. *Taylor*, 115 W. Va. 4, 174 S. E. 485.

Defendant also assigns as error the court's refusal to give the following instructions:

> No. 1. "The Court instructs the Jury that they can not find the defendant guilty of any higher offense, if any, than assault and battery."
> No. 2. "The Court instructs the Jury that they can not find the defendant guilty unless they find from the evidence beyond all reasonable doubt that he struck Neufer Eye in anger; if they find from the evidence that the striking was as a prank, or in play, they shall find the defendant not guilty."
> No. 3. "The Court instructs the Jury, that if it appears that the state summoned as a witness one Gary Flynn on its behalf, and did not use him after being so summoned, and that he was present in response to said summons, the presumption is that his evidence, had it been given, would have been prejudicial to the state."

From the foregoing discussion it is evident that instructions Nos. 1 and 2 do not correctly state the law applicable to this case, and therefore the court committed no error in refusing them.

The proposition of law upon which the defendant's instruction No. 3 was sought to be based is usually found in connection with civil cases. Thus: "Where a party to a controversy fails to examine a material and important witness in his behalf, it will be presumed that the evidence of such witness, if given, would be adverse to such party." *Nichols* v. *Railway Co.*, 62 W. Va. 409, 59 S. E. 968. In many reported civil cases recognition of this

rule is found. In a state case if the prosecuting attorney fails to produce a witness to establish an essential fact the prosecution necessarily fails. But where the state produces witnesses whose testimony tends to sustain the charge of the indictment, the failure to examine another witness who has been summoned by the state and is in attendance of court at the time of the trial does not give rise to an adverse presumption. Such matters are within the reasonable discretion of the prosecuting attorney. *State* v. *Cain,* 20 W. Va. 679, 693; *State* v. *Morgan,* 35 W. Va. 260, 13 S. E. 385; *Hill* v. *Commonwealth;* (Va.) 14 S. E. 330; *Clark* v. *Commonwealth,* (Va.) 18 S. E. 440.

Being of opinion that the record does not disclose any prejudicial error, we affirm the judgment of the trial court.

*Affirmed.*