## 8596. PARRISH v. PARRISH.

1. Where one seeks to recover damages because of an obstruction occurring on the land of another in a stream flowing through his own land and across the land of the other person, which resulted from natural causes, and he alleges that the defendant failed and refused, after notice of the existence of the obstruction, not only to remove it himself, but to permit the plaintiff to remove it at his own expense, and that following a "heavy rain" the water of the stream was impeded by the obstruction and overflowed his lands, destroying a crop thereon and injuring the lands themselves, a cause of action is sufficiently set forth to withstand a general demurrer.

2. The damages sued for were set forth with sufficient particularity to likewise withstand a general demurrer.

3. A paragraph of the petition, setting forth probable consequences to follow in the future from the continued maintenance of the obstruction complained of, was subject to the demurrer interposed.

DECIDED NOVEMBER 14, 1917.

Action for damages; from Walker superior court—Judge Tarver presiding. February 21, 1917.

*R. M. W. Glenn*, for plaintiff. *Rosser & Shaw*, for defendant.

WADE, C. J. The plaintiff alleged, that he was the owner and in possession of a tract of land adjacent to certain lands belonging to the defendant; that a stream of water flowed through his lands and then across the lands of the defendant; that two trees, standing on the lands of the defendant and close to the bank of said stream, were precipitated by high winds and rain transversely across the bed of said stream, and thus constituted, with the help

of leaves and other floating debris which gradually accumulated on the upper side, a partial dam, impeding the natural flow of the water; that the plaintiff, anticipating injury on that account, gave notice to the defendant of the existence of said obstruction, and requested him to either remove the same or to allow the plaintiff to enter upon said lands and do so at his own expense, but the defendant failed and refused to remove said obstruction or to permit the plaintiff to remove the same; that thereafter, at a time named in the petition, "a heavy rain fell," and on account of said obstruction in the bed of the stream, the same overflowed its banks and flooded the lands of the plaintiff and destroyed one and a half acres of corn of the value to petitioner of $100, and injured and damaged the land itself in the sum of $200; that "the value of said crop to petitioner" was $100, and that the "taking off of much of his soil, leaving it uneven and making cuts through said land, thereby damaged the value of said land to petitioner in the sum of $200, both of which amounts petitioner sues for." The plaintiff further alleged, in the 5th paragraph of his petition, that various future injuries might be expected to flow from the continuance of the obstruction complained of.

The defendant demurred to the petition generally upon the ground that the same set forth no cause of action, and specially to the 5th paragraph, which the defendant objected to as immaterial in that it set forth no ground for relief as against him. The court entered up an order sustaining the "within demurrer" and dismissing the petition; and to this judgment the plaintiff excepted.

1. It is insisted in the brief of counsel for the defendant that no cause of action was set forth, because a recovery was sought for an act of God, for which the defendant was in no sense responsible, in that the petition failed to disclose that the trees which fell across the stream from natural causes offered any obstruction to the passage of water along its bed, or injured the plaintiff in any way until a "heavy rain" intervened and produced the damage, and that such a rain was itself an act of God for which the defendant could not be held liable. Our Supreme Court held, in the case of *Cannon* v. *Hunt*, 113 *Ga.* 508, 510 (38 S. E. 983); that "Constant, unusual, or heavy rains can not of themselves be classed as a providential hindrance." The case there under con-

sideration was one where a party sought to excuse delay in completing a building in a given time, because of unusual, heavy, and constant rains. Again, in *Doster* v. *Brown, 25 Ga. 24, 26* (71 Am. D. 153), Judge McDonald, delivering the opinion of the court said: "While every shower of rain that falls upon the earth is the act of God, in contradistinction to the act of man, yet an ordinary freshet is not the act of God in the legal sense which protects a man against responsibility for the non-performance of a contract like that made by this plaintiff." The phrase "act of God" is some times defined as "a natural cause, the effect of which can not be prevented by the exercise of prudence, diligence, and care, and the use of those appliances which the situation of the party renders it reasonable that he should employ; something overwhelming and not merely an incidental circumstance." 1 Corpus Juris, 1173. "The most comprehensive definition of the term is any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains, or care, reasonably to have been expected, could have been prevented. . . When the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God." Id. 1174. Generally speaking, one who is injured in his riparian rights by a detention of the water may recover damages therefor (40 Cyc. 577); and while one sued in such an action may defend because of want of notice to remove the obstruction complained of, if he was not the author thereof (Id. 578), "where defendant seeks to escape liability on the ground that the damage was the result of an extraordinary and unprecedented flood or freshet, the burden is upon him to establish that it was of such character." Id. 585. The mere allegation in the plaintiff's petition that the injury followed as a result of a "heavy rain" would not be equivalent to the statement that there was an extraordinary or unprecedented flood amounting to an act of God; and if this defense was relied upon, the allegation in the petition that a "heavy rain," in connection with the obstruction across the natural bed of the stream, caused the damage would not dispense with proof that the rain was so unprece-

dented and extraordinary as to amount to an act of God. See 1 Corpus Juris, 1177, 1178, and cases there cited. In this suit the plaintiff distinctly alleged that the obstruction in the stream, which occurred from natural causes, was brought to the notice of the defendant before the injury resulted for which he sued, and that he sought permission from the defendant to enter upon the lands of the latter and remove, at his own expense, the said obstruction, which he anticipated might bring about the identical injuries for which he sued; and that the defendant not only failed himself to act upon the notice, but declined to allow the plaintiff to remove the possibility of injury from the obstruction. It is said in Williams *v.* Columbus Producing Co. (W. Va.), 93 S. E. 809, that "No liability attacks to any one for damages sustained by reason of the acts of God and the forces of nature, but a party whose wrongful acts co-operate with, augment, or accelerate those forces, to the injury of another, is liable in damages therefor." It is clear that if the defendant had himself placed the obstruction across the stream, which brought about the injury to the plaintiff, he would have been liable; and under the rule in the Williams case, supra, if he by any wrongful act co-operated with, augmented, or accelerated the forces of nature to the injury of another, he would still be liable for the resulting damage. The question in this case is whether the failure and refusal of the defendant to either himself remove or to allow the plaintiff to remove the obstruction in the bed of the stream, not placed there by his intervention, but resulting from natural causes, amounted to a maintenance of the obstruction by him, and consequently rendered him liable in damages for the injuries flowing not only from his failure to remove the obstruction after notice of its existence *but from his refusal to permit the plaintiff to remove such obstruction.* If the defendant himself had been responsible for the presence of the obstruction in the stream, he could not plead, as a defense to an action for damages on account of such obstruction (coupled with a "heavy" fall of rain), that such fall of rain was extraordinary or unprecedented and therefore an act of God, unless he could go further and both allege and show that the extraordinary or unprecedented flood or freshet would, *itself* and alone, have produced the results complained of. It is clear to our minds that under the allegations in the petition the failure and

refusal of the defendant not only to remove, but even to *permit* the removal of the obstruction from the bed of the stream (on his lands), after due and sufficient notice and request, amounted to a maintenance by him of said obstruction and rendered him liable for the results flowing therefrom on account of a fall of rain merely alleged to be a "heavy rain," and not alleged to be so unprecedented and extraordinary as to amount to an act of God, which by itself and unaided by human intervention brought about the damage sued for. We therefore think that the court erred in sustaining the general demurrer, since the petition as a whole set forth a cause of action.

2. It is insisted in the brief of counsel for the defendant that the allegations of damage are too meager and indefinite to be the basis of recovery, and that therefore the demurrer was properly sustained. The petition alleged that the value of the said crop of corn "to petitioner" was $100, and that the land was damaged to the value "to the petitioner" of $200, in the manner described therein. Fairly construed, the allegations amount to an assertion that the crop was damaged to the extent of $100, and the land to the extent of $200 (actual or market value), whereby petitioner had been injured in these amounts. While the damages are not specifically and precisely set forth, in the absence of any special demurrer upon this ground we think the allegations of damage were sufficient to withstand a general demurrer.

3. The special demurrer to the 5th paragraph of the petition does not appear from the order of the trial judge to have been definitely passed upon; but the same appears to have been well taken, as the allegations therein contained refer to possible damages which might hereafter flow to the plaintiff from the further maintenance of the obstruction in the bed of the stream. This paragraph was therefore clearly demurrable.

*Judgment reversed. Jenkins and Luke, JJ., concur.*